O-’Neall J.
delivered the opinion of the Court.
-n , • , . - ¶ h rom trie view winch Í take of this case, it will he necessary to acertain, 1st, What title David son, the lessor of the defendant, has to the land, upon which the defendant has entered? and 2nd, If his tie is that of tenant in common with the plaintiff, has there been an actual ouster established by the ver-fl i r* f nf til f» i n nr ? uiot ox ine juiy r
1st It appears that Molly Rogers, the owner of the land, died intestate, leaving no issue, but nine brothers and sisters, her only heirs and next of kin.' The plaintiff is one of the sisters, and Joshua Johnson, one of the brothers of the intestate. At the sale of her personal estate, the land was sold by the verbal consent it is said of all interested; at that sale. Joshua *112 Johnson became the purchaser. After some time the and one of her sisters, filed a bill in the Court of Equity, for an account of Joshua’s administration °f the personal estate, and also for partition and an account of the rents and profits of the land. To that bill, Joshua answered relying on the sale made by the verbal consent of the parties. The case was referred the commissioner, who re ported a large sum due to the complainants, as well for their shares oí the personal estate, as for their shares of the proceeds of the of the land. The Court by a decretal order dithe commissioner to convey to Samuel Johnson, all the interest which Molly Rogers had in the -, i , . land, or to any person to whom he might direct the conveyance to be made. The namee‘Samuel”'was ob-vi°usly inserted by mistake instead of Joshua, andat December Term, 1831 of the Court of Appeals, the was corrected* The complainants issued their execution for the amount, reported in their favor, and lodged it in the sheriff’s office on the 10th °**'Sent&ihber, 1827: elder executions, at the suit of Da^SHficharclson and Francis H. Wardlaw, against Johns’off,, were also in the sheriff’s office. All tfie^e'-ííxecutiohs <vere perhaps levied on the land, which was sb'ld under Richardson’s and Wardlaw’s ex-e*ci!<tipns, as the property of Joshua Johnson, and pur-David Riehardson for $53 ; and on the 1st December, 1828, the sheriff conveyed in the usual fornf'tlie land to him. The plaintiff and her sister received no part of the proceeds of the sale of the land. The plaintiff was in the actual possession of part of the land, and the defendant as tenant of Richardson, took possession of the field which she had cultivated the preceding year, and cut down and inclosed about four acres of the woodland. For this trespass, the action was brought. Pending this action, on the 12th of April 1832, the commissioner conveyed to Joshua Johnson, under the decretal order as corrected by the Court of Appeals, the interest which Molly Rogers had in the land.
From this statement of the facts, I think it is de *113 monstrable, that Richardson took the interest of Joshua Johnson, as one of the heirs of Molly Rogers in the land, by virtue of his purchase at sheriff’s sale, and that this was all which he acquired. Upon the death of the intestate, her land descended to her heirs, and their interest in it was a legal, not an equitable estate. It is true, this estate might have been defeated by her debts, if she had owed any; or it might have been ended and determined by a sale or assignment in partition. But until divested in some one of these ways, Joshua Johnson had a legal estate in one-ninth of the whole land: This was liable to seizure and sale, under execution. The case of Rabb v. Aiken, 2 M’C. C. R. 118, does not militate against this position. In that case, the land had been assigned in proceedings in partition to three of the heirs, and a sum assessed and directed to be paid to Robert Rabb, whose interest was, subsequent to the judgment in partition seized in, and sold under execution, and purchased by Aiken. It was obvious, that the interest oj^¡4übert Rabb as one of the heirs of his infest was ended and determined by the, tition, and that of course the p acquire any title to the land; an ' the Court intended to go in dec! If the interest of Joshua Johnson liable to seizure and sale under exed can be no doubt, that the sheriff sale of, the whole tract, under executions against Joshua Johnson, would pass, whatever interest he had in it, to the purchaser. For it is the defendant’s legal'interest and estate in the land, (be it in se-veralty, or in common) which the sheriff can sell and convey under execution. A levy on, and sale and conveyance of, the whole tract of land was, in legal contemplation, a levy on, and sale and conveyance of, all the interest and estate of Joshua Johnson, in it: and these are the precise terms of the sheriff’s deed. The purchaser, Richardson, under the sheriff’s deed, was entitled to one-ninth of the whole tract, the distributive share of Joshua Johnson, as one of the *114 heirs of Molly Rogers, deceased. Did he acquire also, by his deed, any other or greater interest ? I think not. For if all the heirs of Molly Rogers, had been parties to the bill in which the decretal order directed a conveyance to be made to Joshua Johnson,, still, until it was executed, he had no legal estate in the landbeyond the one-ninth to which he was entitled as heir atlaw. Until executed, his right to the land was a mere equity, and as such, was not liable to execution. For if the proceedings in the case in Equity, be regarded as an assignment by the decree of the Court in partition to one of the heirs of the whole land, on the payment of a sum assessed in favor of the other parties, then, according to the act of ’91, the estate would not vest in Joshua Johnson, until the payment of the consideration money. (2 Brev. 103.) And 1 am disposed to think that under the decrétal order, the Court would have held the commissioner justified in refusing to execute the title, upon returning the fact, that the consideration money had not been paid. The decree, however imperative in its terms, is nothing more than an authority to the commissioner to execute the conveyance; for this act he is the agent of the Court, as well as of the parties, and whatever would prevent the Court from decreeing the estate to be absolutely vested, would authorize him, on being informed of the fact, to refuse to execute the title. But if the decree is to be regarded as directing a title to be made, in consequence of a sale, for partition, then, and in that case, the land by the act of ’91 is declared to stand “ pledged for the payment of the purchase money.” (2 Brev. 103—4.) If, after the decree directing titles, but before the execution of the conveyance, it was ascertained that a conveyance would endanger the rights of the distributees to payment, in such a case, I think the commissioner might have refused to execute the title, until the purchase money was paid, and that the Court would have held him justified.— These views shew that Joshua Johnson, under the decretal order, had not, and could not have a legal estate, until the commissioner conveyed to him in pur- *115 nuance of the decree. This was not done at the time the sale took place. The subsequent deed of the •commissioner to Joshua Johnson cannot (if it has any legal effect) enure to Richardson’s benefit, so as .to perfect his title to the whole tract. For he bought, and the sheriff only conveyed to him, the legal estate of Joshua Johnson in the land; his equitable interest to have the conveyance executed, still, remained in him.' When it was executed, it vested the interest of the other distributees (if indeed it conveyed any thing) in Joshua Johnson, and Richardson’s purchase and •deed, being already satisfied by the share of Joshua, as one of his (deceased) sister’s heirs, it cannot operate prospectively upon whatever future estate Joshua might acquire in the land. Rut I think the commissioners deed ought to be, and will be treated as a nullity in a proper case, when brought to the view of the Court. It was executed without any demand being made by the said Joshua; he has never as yet accepted it; this plaintiff and her sister, the complainants in the bill in equity, by their counsel, had given notice to the commissioner, not to execute it. His deed under such circumstances cannot prevail even to convey the interest of the complainants in the suit in equity, to ■Joshua Johnson. So far I have in some measure treated the decree in equity, as if it had been made between and among all the heirs of Molly Rogers, (deceased.) But it appears that none were parties, except Sarah, Hester and Joshua, three out of nine. The decree directs a conveyance of all the interest of Molly Ro gers to Joshua. This the Court had no right to decree from the parties before the Court; it could at most, have only decreed the shares of the complainants to be conveyed to him. This decree cannot, therefore, be set up as a bar to a bill filed by all the heirs for partition; and in such a case, upon its appearing as does now appear, that Joshua Johnson has not paid Sarah and Hester for their shares, under the decree in the former case, there would be no difficulty in the Court, holding their shares in the land pledged for the payment of the sum which *116 Joshua should, on that account, have paid under the decree, and thus give them the benefit of their interest in the land. I am therefore fully satisfied that. Richardson must be regarded as seized of Joshua Johnson’s share, one ninth, of the said land; and that this is the extent of his interest under his purchase and deed from the sheriff. He is therefore clearly a tenant in common with the plaintiff, in the whole land. This brings us to consider the second question. From the proof, reported by' the presiding-judge, I think the jury might have found an actual ouster. For if, as I suppose was the fact, the defendant took the possession of the field which had been cultivated by the plaintiff the year preceding, and which was, therefore, in legal contemplation, her close, against her will, I think it would have constituted an actual ouster. The case of Harman v. Gartman, State Rep. 430. has been relied upon, to shew, that under the proof, in this casé, no ouster was committed ; but on examining that case, I am satisfied that it does not authorize any such conclusion. In that case, the defendant and Lites, were tenants, in common, of the whole tract. He and Lites, the year preceding, had each tended parts of the same field.— Lites rented the whole field to the plaintiff, against the will of the defendant. The plaintiff planted the Avhole field; the defendant entered and ploughed up so much as was planted on that part which he tended the year preceding, leaving that part which Lites had tended the year preceding, untouched. The Court held, that this was not such an ouster, as for which trespass would lie; it is true, that the general words, in which the reasoning of Judge Huger, who delivered the opinion, is couched, would, if taken without reference to the case, authorize the conclusion, that a tenant in common, could not, in any case, maintain trespass against his co-tenant. But the words and reasoning of the Judge, must be understood in reference to the case; and when so applied, we understand the Judge to say, that the proof in the case was not sufficient, to authorize, the plaintiff to main *117 tain trespass. In that conclusion I fully concur r for,if any ouster was proved, it is clear, that it was committed by the plaintiff and not the defendant.— One tenant in common, has the fight to cultivate so much of the cleared land as is equal to his interest; he may too, if his co-tenants are not in possession, cultivate the whole, and not be a trespasser. In that case, the defendant as well as Lites, were in actual possession of distinct parts of the same field ; the plaintiff, Lites’ tenant, had a right to the possession of that part which was in his landlord’s possession, the preceding year. His entry on the defendants’ possession was in itself unlawful and an ouster. He could gain no right thereby ; and it followed that the defendant had the right to re-enter on him. In the case now before us, the plaintiffs’ possession was actual and exclusive, and the defendant’s entry upon it, and thereby excluding her from it, was in my judgment an actual ouster. But from the report of the case, it does not appear that the presiding judge submitted that question to the jury. He held that Richardson, the defendant’s lessoi-, had no title at all, and was not tenant in common with the plaintiff, and that therefore the defendant’s entry was tortious, from want of title in his lessor. This was clearly an erroneous view of the case, for the defendant’s lessor was a tenant in common with the plaintiff, and the jury ought to have been instructed, that unless the defendant had committed an actual ouster in entering on the plaintiff, the verdict must be in his favor ; if however they should be satisfied that an ouster was committed, then, that theyshould find for the plaintiff. The case not being properly submitted to the jury, and they never having passed upon the question, we cannot say that an actual ouster has been established by the verdict of the jury; and for this reason the case must go back for another trial.

The motion for a new trial is therefore granted.

Johnson J. concurred.
Harper J. absent.